**Gerardo GOMEZ, Appellant,**

v.

**SARATOGA HOMES, Appellee.**

**No. 08–14–00320–CV**

Court of Appeals of Texas, El Paso.

March 29, 2017

Steven Samples, Enrique Chavez Jr., for Gerardo Gomez.

Stacy Hoffman Bruce, James A. Martinez, Hillary Lynch, for Saratoga Homes.

Before McClure, C.J., Rodriguez, and Hughes, JJ. Hughes, J., not participating

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

Gerardo Gomez sued Saratoga Homes after falling and suffering injuries while painting a home that was under construction. Saratoga owned the home and was acting as the general contractor in its construction. Saratoga moved for summary judgment on Gomez's negligence and premise liability claims, arguing that it owed no duty to Gomez: (1) because he was not Saratoga's employee but rather the employee of an independent contractor, and it did not retain or exercise actual control over the performance of Gomez's work; and (2) because the premises condition allegedly causing Gomez's injury was open and obvious. Gomez contends the trial court erred in granting summary judgment because he raised fact issues concerning Saratoga's control over his work and its duty to warn. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

Saratoga served as the general contractor on numerous homes it owned and that were under construction in the El Paso area. Saratoga had entered into a written subcontract agreement with Gerardo Prieto to provide painting services on several of these homes. Prieto, in turn, had hired Gomez as part of his painting crew. In September 2011, Gomez was working at a Saratoga job site when he climbed onto the roof of the porch through a second story window, began walking sideways along the roof while looking up, and fell from the roof to the ground, fracturing his left ankle. Gomez originally sued both Prieto and Saratoga, but later dismissed Prieto from the lawsuit. Gomez raised a negligence claim, alleging that he was an employee of Saratoga and that Saratoga had negligent-

ly breached its duty to provide him a safe workplace by failing to train him and provide him with safety rules and regulations and safe machinery and equipment. In response, Saratoga denied that Gomez was its employee, but was instead an employee of one of its independent contractors. Gomez subsequently amended his petition and raised a premises liability claim, in which he argued he was an invitee or licensee and that Saratoga had breached its duty to him by failing to warn or make safe a known, dangerous condition on the premises that posed an unreasonable risk of harm. While Gomez's amended petition no longer alleged a negligence claim or that he was an employee of Saratoga or that Saratoga owed a duty to him as its employee, it is apparent from the pleadings below and the briefing in this Court that the parties have continued to assume that Gomez was still proceeding under both his negligence and premises liability theories.

## Motion for Summary Judgment

Saratoga moved for summary judgment based on both traditional and no-evidence grounds. It alleged that Gomez's own testimony established that he was not its employee, but instead was an employee of Prieto, Saratoga's subcontractor, and that it owed no duty to Gomez because there was no evidence to suggest that Saratoga controlled or had a right to control Gomez's work. As summary judgment evidence, Saratoga attached an excerpt from Gomez's deposition, in which Gomez testified that he considered himself to be Prieto's employee, that he had interviewed for the painting job with Prieto, that he was trained by Prieto, that he was paid in cash by Prieto, and that it was Gomez's understanding that he "worked under" Prieto,

and that Prieto in turn "worked under" Saratoga. Gomez also testified that Prieto was the only person who gave him instructions regarding which houses to paint, and that he never received any instructions from Saratoga regarding how to perform his job. Saratoga also attached a copy of its subcontractor agreement with Prieto, in which Prieto had agreed that Saratoga would have "no right of direction or control over the performance of [Prieto's] work except as to the results to be accomplished," and that Prieto "shall retain all control of work schedules, techniques and procedures of all work performed" by Prieto and his employees. Prieto further agreed to be responsible for implementing and enforcing all safety standards and procedures at the job site, and for assuring that all of his employees "follow all safety procedures, use all necessary safety equipment and precautions, and [to] generally keep the work site safe and free from undue risk."

Saratoga's motion also addressed Gomez's premises liability claim. It argued that a general contractor's duty to a subcontractor's employees is limited to inspecting the premises and warning of "concealed hazards" about which the contractor knew or should have known. Saratoga contended that any danger that existed on the premises was "open and obvious" and that Gomez was well-aware of the dangers he faced when working on the roof of a second-story porch without any safety equipment or railings. Saratoga pointed to Gomez's deposition testimony in which he testified that he was aware of the need to use a ladder while painting on the roof, but that he chose to work without one, and that he acknowledged he was aware of the danger involved in doing so prior to his accident.[1] Saratoga therefore

---

1. Gomez testified that on the day of his injury, he knew that Prieto had ladders in his van for his employees to use, but that he was unable to get a ladder because Prieto was not there

argued that it did not owe Gomez a duty to warn him of that known danger.

## Response to the Motion for Summary Judgment

In response, Gomez argued that: (1) fact questions remained whether he should be treated as an employee of Saratoga and whether Saratoga had control over his work, thereby giving rise to a duty to ensure that his work was conducted in a safe manner; and (2) the evidence demonstrated that Saratoga was aware that a safety hazard existed on the premises and that it had a duty to correct the hazard or warn him about it. In support of his arguments, Gomez relied on Prieto's deposition testimony, in which Prieto expressed his opinion that Saratoga's employees had controlled the details of his work, and that they were responsible for ensuring the safety of the job site. Gomez also attached a copy of Saratoga's safety manual, which provided that its employees were required to use appropriate safety equipment when they worked at heights over four feet, and asserted that this manual was applicable to all workers at the job site, including "contract" workers such as himself. He also relied on the deposition testimony of various Saratoga employees, who explained that appropriate safety equipment, as used in the safety manual, could include railings, safety nets, and safety harnesses to help prevent a worker from falling when working at height. His testimony further indicated that Saratoga had assigned certain employees to conduct daily inspections at its job sites to ensure the sites were in compliance with Saratoga's own safety rules and OSHA safety regulations. Gomez claimed that by doing so, Saratoga had assumed actual control of safety issues on the job site, and thereby owed a duty of

care to all workers, including the "contract" workers at the job site, which it breached by failing to ensure that Prieto and his employees were using proper safety equipment while working on upper floors of the homes under construction. He contended that in light of the "extensive, virtually absolute, control of the manner of work performance in accordance with the corporate safety manual," he was not merely the employee of an independent contractor on the premises, and that he was instead an employee of Saratoga to whom Saratoga owed a duty of care. Gomez further argued that because Saratoga's employees were present at the job site every day, they must have been aware of the dangerous conditions existing at the job site, giving rise to a duty to warn the workers about those conditions, even if they were open and obvious. Following a hearing, the trial court entered a written order granting Saratoga's motion for traditional summary judgment, but denying its no-evidence motion.

## ISSUES FOR REVIEW

Gomez contends on appeal that the trial court erred in granting summary judgment because: (1) the summary judgment evidence raised fact issues on the scope of Saratoga's control over its independent contractor; and (2) the open and obvious exception to Saratoga's duty as a landowner to warn was not applicable to him as an employee or to its "controlled contractor." Gomez also argues that the trial court abused its discretion in excluding some of his summary judgment evidence.

## WAS SUMMARY JUDGMENT APPROPRIATE?

### Standards of Review

We review a trial court's order granting summary judgment de novo. *KCM Fin.*

at the time. Gomez explained that he wanted to leave work early that day and that he chose to get on the roof without a ladder and without waiting for Prieto's return.

*LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). Traditional summary judgment is proper when the movant establishes that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See BCCA Appeal Group, Inc. v. City of Houston*, 496 S.W.3d 1, 6–7 (Tex.2016). To be entitled to summary judgment, a defendant must conclusively negate at least one essential element of each the plaintiff's causes of action or establish all elements of an affirmative defense as a matter of law. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008). Once a defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue as to each challenged element of the plaintiff's claim or one element of the defendant's affirmative defense. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). On appeal, we review the summary judgment evidence in the light most favorable to the non-movant, "crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

We review a trial court's ruling concerning the admission or exclusion of summary judgment evidence for an abuse of discretion. *Ragland v. BNSF Ry. Co.*, 501 S.W.3d 761, 770 (Tex.App.–El Paso 2016, no pet.); *Ordonez v. Solorio*, 480 S.W.3d 56, 67–68 (Tex.App.–El Paso 2015, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its actions are arbitrary and unreasonable. *T.W. v. Texas Dept. of Family & Protective Services*, 431 S.W.3d 645, 651 (Tex.App.–El Paso 2014, no pet.).

## The Right of Control

Gomez argues that the summary judgment evidence raised a fact issue that Saratoga retained sufficient control over the performance of his work to create a duty of care. We disagree.

To sustain a negligence action, a plaintiff must establish that the defendant owed him a legal duty, that the defendant breached that duty, and that the breach proximately caused the plaintiff's damages. *Nabors Drilling U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009); *see also Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). Whether a duty exists is a question of law for the court to decide. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 209 (Tex. 2015); *Nabors Drilling U.S.A., Inc.*, 288 S.W.3d at 404; *Saucedo v. Horner*, 329 S.W.3d 825, 830 (Tex.App.–El Paso 2010, no pet.) (the existence of duty is a threshold question of law). The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed. *Saucedo*, 329 S.W.3d at 830.

"Generally, an owner or general contractor does not owe a duty to its independent contractor's employees to ensure that they safely perform their work." *Gonzalez v. Ramirez*, 463 S.W.3d 499, 506 (Tex. 2015); *see also Harrison*, 70 S.W.3d at 783; *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 n.1 (Tex. 1999). However, "when the general contractor exercises some control over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (quoting *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985)).

A plaintiff may establish that a general contractor retained control of work in one of two ways. First, the plaintiff may come forward with evidence of a

contractual agreement that explicitly assigns a general contractor the right to control a subcontractor's work, and second, in the absence of a contractual agreement, the plaintiff may come forward with evidence that the general contractor exercised actual control over the manner in which the subcontractor's work was performed. *Id.* (citing *Koch*, 11 S.W.3d at 155); *see also Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004) (the requisite right may arise either contractually or through the actual exertion of control); *Painter v. Sandridge Energy, Inc.*, 511 S.W.3d 713, 720, 2015 WL 6704759, at *4 (Tex.App.–El Paso Nov. 3, 2015, pet. denied) (recognizing that in the absence of an explicit contractual right of control, "a plaintiff may also show that one contracting party actually exercised control over the manner in which another contracting party performed its work").

We conclude, as a matter of law, that Saratoga did not retain the contractual right to control Prieto's work. To the contrary, the subcontractor agreement between Saratoga and Prieto expressly stated that Saratoga had "no right of direction or control over the performance of [Prieto's] work except as to the results to be accomplished," and further articulated that Prieto was responsible for implementing and enforcing all safety standards and procedures at the job site and for assuring that all of his employees followed all safety procedures and used all "necessary safety equipment and precautions[.]" Accordingly, Saratoga did not contractually assume any duty of care toward Prieto or his employees. *See Bright*, 89 S.W.3d at 607 (concluding as a matter of law that a subcontractor agreement did not impose a duty on the general contractor toward independent contractor's employee, where general contractor did not retain the right to control the means, methods, or details of the subcontractor's work). The key question for our consideration, then, is whether Saratoga exercised actual control over Gomez's or Prieto's work in such a manner as to impose a duty on Saratoga.

Initially, we note that throughout his brief, Gomez argues that it is the "right of control, and not the actual exercise of control," or in other words, the mere "possibility" of control, that gives rise to a general contractor's duty to ensure that an independent contractor performs work in a safe manner. In support of this argument, he directs us to the Supreme Court's holding in *Pollard v. Mo. Pac. R.R. Co.*, 759 S.W.2d 670 (Tex. 1988) (per curiam). In *Pollard*, however, the court concluded that the general contractor owed a duty of care to an independent contractor's employee because the general contractor "contractually retained" control over the independent contractor's work, and in particular expressly retained control over the very aspect of work that allegedly caused the employee's injuries. *Id.* at 670. Because the court found that there was an express contractual obligation giving rise to a duty of care, it did not consider whether there was sufficient "actual" control over the employee's work, explaining that when a "right of control over the work has a contractual basis, the fact that no actual control was exercised will not absolve a premises owner of liability." *Id.* (citing *Newspapers Inc. v. Love*, 380 S.W.2d 582 (Tex. 1964)).

■ Where, as here, a general contractor does not contractually retain the right to control the independent contractor's work, the court must determine whether the general contractor exercised "actual control" over the subcontractor's performance of his work. *Bright*, 89 S.W.3d at 607; *see also Newspapers, Inc.*, 380 S.W.2d at 592. Thus, in determining whether a general contractor exercised *actual* control

over an independent contractor's work, it is insufficient to demonstrate that the general contractor merely has the *possibility* of exercising such control. *Gonzalez,* 463 S.W.3d at 506 (the "possibility of control is not evidence of a 'right to control' actually retained or exercised").

As the court in *Gonzalez* explained, the mere fact that a general contractor retains a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations does not mean that the independent contractor is controlled as to his methods of work, or as to operative detail. *Id.* Instead, there must be such a retention of a right of supervision that the independent contractor is not entirely free to do the work in his own way. *Id.* In other words, a general contractor can direct when and where an independent contractor does the work and can request information and reports about the work without assuming liability. *Id.*

Imposing liability on owners and general contractors who stop work perceived as unsafe would deter them from setting even minimal safety standards. *Id.* Consequently, the right to preclude work from beginning and the implementation of a safe-work permit system are insufficient to establish actual control. *Bright,* 89 S.W.3d at 607–09. Likewise, instructing an independent contractor and its employees to perform work in a safe manner and having the authority to stop dangerous conduct is no evidence of actual control. *Koch,* 11 S.W.3d at 156. A general contractor's right to forbid work from being performed in a dangerous manner, and the fact that the general contractor would have stopped the work and required protective equipment had he seen the employee of the independent contractor not using such

equipment, merely shows the possibility of control, not actual control. *Ellwood Tex. Forge Corp. v. Jones,* 214 S.W.3d 693, 702–03 (Tex.App.–Houston [14th Dist.] 2007, pet. denied).

Moreover, the actual control exercised by the general contractor must relate to the injury suffered as the result of the contractor's alleged negligence. *See Bright,* 89 S.W.3d at 607; *see also Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 528 (Tex. 1997) ("[f]or the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury"); *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex. 1993) (finding "[t]he focus should be on whether [the defendant] had the right to control the alleged security defects that led to [the plaintiff's] injury"); *Painter,* 511 S.W.3d at 722, 2015 WL 6704759, at *5 (the "case law has always required the control to relate to the injury causing activity").

Here, Saratoga came forward with evidence that Gomez was Prieto's employee; that Prieto hired, trained, paid, and supervised him; that Prieto was contractually obligated to take responsibility for his own employees' safety; that Prieto did in fact assume that responsibility; and that Saratoga had never instructed Gomez in how to perform his job. That evidence was sufficient to make an initial showing that Gomez was not Saratoga's employee, that it did not exercise actual control over Gomez's work, and that it did not otherwise owe him a duty of care. This evidence shifted the burden to Gomez to come forward with evidence that Saratoga did in fact owe a duty to Gomez to ensure the safe performance of his work. Gomez contends that he came forward with sufficient evidence to establish that Saratoga exercised actual control over the safety issue that caused his injuries, relying on two

categories of evidence: (1) evidence that Saratoga actually controlled the details of Gomez's work in general; and (2) evidence that Saratoga had the authority or right to instruct Gomez on safety issues. We view each category of evidence separately.

Gomez points to two statements made by Prieto during his deposition, in which Prieto testified that Saratoga controlled the "details of ... [his] work," as well as the work of his employees, and that Saratoga had the right to instruct him and his employees on how to perform their work and to generally tell him "what to do" at the job site. Gomez argues this testimony is sufficient to raise a fact issue that Saratoga exercised actual control over his work.

There are several problems with his argument. First, Gomez has taken Prieto's statements out of context. Not only were Prieto's statements unsupported by any facts, they were contradicted by Prieto's remaining testimony regarding the specifics of how his work was actually performed. Among other things, Prieto testified unequivocally that he had hired Gomez to work as one of his painters, that he trained Gomez, that he supervised Gomez, and that Gomez did not work for Saratoga. Prieto further clarified throughout his testimony that although Saratoga told him and his employees which houses to paint on a given day, Saratoga did not tell them how to perform his work; instead, he acknowledged that he was the one who decided "how to paint the homes," that he supplied the necessary equipment for his employees to paint the houses, and that he decided what equipment his employees would use.[2] Prieto then clarified that Saratoga's involvement in the performance of

his work was limited to telling him the location of the houses to paint, and instructing him to make corrections if he had done something "wrong," which he needed to "fix." Merely directing when and where an independent contractor does his work and making suggestions or corrections to the independent contractor's work does not establish the type of "actual control" sufficient to impose a duty on the general contractor. *Gonzalez,* 463 S.W.3d at 506. That Saratoga may have had input into how Prieto performed his work in general does not address whether Saratoga exercised actual control over the specific safety issues that led to Gomez's fall from the roof, *i.e.,* his failure to use appropriate safety equipment. We consider that issue next.

In support of his argument that Saratoga controlled safety issues at the job site, Gomez relies on the deposition testimony of Saratoga's employees that Saratoga employs construction managers who are responsible for overseeing construction of several homes in a particular area, and who are tasked with going to the various job sites every day to inspect the sites and ensure that work is being performed properly. Saratoga acknowledged that if a manager were to observe a hazardous condition at a job site or if he were informed of a safety issue, including one created by a subcontractor, the manager would be responsible for taking "appropriate action," which could include speaking to the responsible subcontractor and making a request that the subcontractor either remove or correct the hazard. The employees further testified that in the worst case scenario, Saratoga could make the decision to terminate the contractor for any safety violations.

---

2. Prieto testified that he provided his painters with brushes and other necessary equipment to perform their work, and that Saratoga only provided the paint they were to use on a given home.

The employees indicated that Saratoga's safety manual expressly stated that employees working at or above four feet were required to use "suitable fall protection," which would include properly placing and utilizing a ladder, using safety harnesses, or erecting "barriers" such as railings to prevent workers from falling.[3] These same employees also indicated that Saratoga had the general right to enforce its safety rules with regard to "contract employees" such as Prieto and Gomez. Saratoga acknowledged that if a construction manager viewed a worker using inadequate fall protection that would be "something" he could bring to the attention of the responsible individual. The employees, however, emphasized that it is ultimately the subcontractor's responsibility to ensure the safety of its own employees, and that a construction manager would not necessarily be aware of the job site hazards created by a subcontractor.

Gomez relies heavily on Prieto's deposition testimony to argue that Saratoga somehow controlled safety issues at the job site. Prieto's testimony actually established an opposite conclusion. He simply echoed the testimony of the Saratoga employees that, at most, Saratoga had the general right to instruct him and his painters with respect to performing their work in a safe manner.[4] In any event, instructing an independent contractor and its employees to perform work in a safe manner, requiring an independent contractor's employees to use protective equipment, and having the authority to stop dangerous conduct is no evidence of actual control. *See Koch,* 11 S.W.3d at 155 (a general contractor's right to give instructions to perform work in a safe manner and the authority to stop dangerous conduct was no evidence of actual control); *Jones,* 214 S.W.3d at 702–03 (that the general contractor would have stopped the work and required protective equipment had he seen the employee of the independent contractor not using such equipment, did not show actual control); *see also Gonzalez,* 463 S.W.3d at 506–07 (a general contractor's right to direct a contract worker to perform his work in a safe manner is not the equivalent of exercising actual control over safety issues).

More importantly, Prieto never testified that Saratoga exercised any actual control over the safety issues in question. To the contrary, Prieto testified that Saratoga never held any safety training sessions for him or his employees, and never gave him any specific instructions regarding what safety measures or equipment he and his painters should use while working from a height.[5] To his knowledge, no one from Saratoga had ever given directions to Gomez regarding any safety issues at the job site.

**3.** The manual itself simply states: "Do not work at heights above four feet without suitable fall protection."

**4.** Prieto responded in the affirmative when asked if he believed Saratoga's safety director supervised his work for "purposes of telling [him] what to do in terms of the details of [his] work as it relates to safety issues[.]" Prieto further testified that the director would tell him how to do his work safely, and that if he did not follow his instructions he would be subject to being "fired." In addition, he expressed his general and unsupported belief that the director was "responsible for the safety of Mr. Gomez at the time of [Mr. Gomez's] fall."

**5.** Instead, Prieto testified that, at most, Saratoga only instructed workers at the job site to wear hard hats, but that he was responsible for ensuring that his employees actually wore their hats. Even this testimony is unrelated to whether Saratoga exercised actual control over whether Prieto's employees were required to use certain safety equipment while working at a height, which Gomez contends was the cause of his injury.

Prieto acknowledged that, pursuant to the parties' subcontractor agreement, he was responsible for his employees' safety pursuant to his contract with Saratoga, and for providing them with all necessary equipment to be used at the job site. He further acknowledged that he did in fact provide all necessary equipment to his employees, including ladders for his employees to use when they were painting at heights, and that he trained Gomez on the need to use a ladder under those circumstances. Prior to his fall, Gomez had always used a ladder while working at heights, and Prieto did not describe a single occasion when he had observed Gomez violating that rule. No one from Saratoga had ever advised him that it would be appropriate for one of his employees to paint without a ladder or without appropriate safety equipment. And finally, on the day in question, there were no Saratoga employees present at the job site, and there is nothing in the record to support a conclusion that any Saratoga employees were aware that Gomez was painting without a ladder or without any other safety equipment at the time of his fall.

In sum, Gomez's summary judgment evidence established, at best, that Saratoga retained the right to give general instructions to contract workers with respect to safety issues, authorized its employees to conduct safety inspections and authorized them to take corrective action to address known safety issues. This evidence establishes only the possibility of control and was insufficient to raise a fact issue as to actual control so as to impose a duty on Saratoga concerning Gomez's injuries. It would take a logical leap to conclude that the mere fact that Saratoga retained the general authority to instruct contract workers to perform their jobs in a generally safe manner and to correct known safety issues constituted actual control over the safety issues that caused Gomez's injuries, a leap we decline to take. *See Gonzalez*, 463 S.W.3d at 508 (concluding that it would take a "logical leap" to conclude that an "unexercised general right" to control a safety issue at a job site prevented the subcontractor from performing his work in his own way). Because we conclude the trial court did not err in granting Saratoga's motion for traditional summary judgment as to Gomez's negligence cause of action, we overrule Issue One.

### Duty to Warn about Open and Obvious Dangers

■ Gomez alleged that as a premises owner, Saratoga had knowledge that a dangerous condition existed on its premises that posed an unreasonable risk of harm and that Saratoga owed him a duty to warn him of that condition or to make the condition reasonably safe. In its motion for summary judgment, Saratoga argued that it had no duty to warn Gomez of or take any steps to correct any alleged danger, because Gomez' injuries stemmed from a danger that was "open and obvious." Saratoga noted that Gomez was well-aware of the danger of not using a ladder to paint at a height, and in particular pointed out that even Gomez himself admitted in his deposition testimony that he not feel "safe" while he was working on the roof without a ladder or any other safety equipment, thereby admitting that he recognized the obvious danger of doing so.

Gomez recognizes the general rule that a premises owner has no duty to warn an independent contractor of a dangerous condition that is open and obvious. He does not argue that the danger in question was *not* "open and obvious." Consequently, it is not necessary to address whether painting without protection on an open roof of a second-story porch on a home under construction is an open and obvious danger. We note that various courts have

found substantially similar conditions to be open and obvious, and have rejected any argument that a general contractor had the duty to warn a subcontractor's employee about the condition. *See, e.g., Lopez v. Homebuilding Co., Inc.,* No. 01-04-00095-CV, 2005 WL 1606544, at *3 (Tex.App.–Houston [1st Dist.] July 7, 2005, no pet.) (general contractor had no duty to its subcontractor's employee when the employee fell from an open balcony on a second story house, as the danger posed was "open and obvious"); *Hernandez v. Hammond Homes, Ltd.,* 345 S.W.3d 150, 156–57 (Tex.App.–Dallas 2011, pet. denied) (general contractor had no duty to warn roofing subcontractor that he could fall because danger of falling and the lack of fall protection was "an open and obvious defect, not a concealed defect").

▪ Gomez's argument is strictly limited to whether the open and obvious doctrine should have been applied to his case. He contends that it does not apply because he should be treated as an employee of Saratoga. He argues that an employer owes a duty to its employees to warn of virtually all dangerous conditions on its premises, including those that are open and obvious. We disagree because even if Gomez were an employee of Saratoga, it would not have the duty to warn him of an open and obvious danger. "[A]n employer generally does not have a duty to warn or protect its employees from unreasonably dangerous premises conditions that are open and obvious or known to the employee[.]" *Austin,* 465 S.W.3d at 198. There are only two limited exceptions to this general rule, neither of which applies here. The first exception may arise only when a dangerous condition results from the foreseeable criminal activity of third parties. *Id.* at 204. The second arises when the employee "necessarily must use the unreasonably dangerous premises," and despite the

employee's awareness and appreciation of the dangers, he "is incapable of taking precautions that will adequately reduce the risk." *Id.* Gomez's own testimony established that he was aware of the danger, that he was capable of taking precautions that would have reduced any risk, and that he chose not to take those precautions. Gomez himself testified that Prieto had ladders available for his employees' use while they were painting from a height, and that despite being aware of the need to use a ladder while painting on the roof, Gomez chose to work without a ladder. He knew that Prieto had ladders in his van for his employees to use, but that he wanted to leave work early that day and simply chose to get on the roof without a ladder and without waiting for Prieto's return.

We conclude the trial court did not err in granting Saratoga's motion for traditional summary judgment as to the premises liability claim, because, even assuming Gomez was Saratoga's employee, Saratoga had no duty to warn or protect him from an open and obvious danger. Issue Two is overruled.

### Exclusion of Summary Judgment Evidence

▪ Finally, Gomez contends the trial court abused its discretion when it sustained objections to evidence he presented in response to the motion for summary judgment. Saratoga filed a written objection to portions of Prieto's deposition. Saratoga asked the trial court to rule on some of the objections it had made during the deposition. The three questions under consideration are:

Q: So Saratoga Homes knew, because of what you told him—told them [referring to Saratoga employees] that on the day that Mr. Gomez was injured he was injured on a Saratoga Homes property

while working for Saratoga Homes. True?[6]

Q: Now, Luis Cortinas, who is the safety director for Saratoga Homes, he was responsible for the safety of Mr. Gomez at the time of the fall. True?

Q: And Mr. Cortinas, as the safety director for Saratoga Homes, he had the right to tell Mr. Gomez to do something or not do—or not to do something, in terms of how he performed his work. True?

Saratoga's attorney objected to all three questions on two grounds: (1) "form" and (2) "leading."[7] Over Saratoga's objections, Prieto answered "Yes" to all three questions.

At the hearing, Saratoga's counsel explained that she objected to the "form" of the first question because it was "vague," "confusing," and called for "speculation"; to the second question because it assumed facts not in evidence and because there was no prior testimony to substantiate that Cortinas was the safety director for Saratoga or what Cortina's duties were with regard to Prieto and Gomez; and to the third question because it was "vague and ambiguous," and because it broadly asked if Cortinas had the right to direct him to do "something," with no explanation what that term meant and was asked without any foundational evidence to establish whether that "something" was within the scope of Cortinas's role as safety coordinator.

The trial court sustained all three objections, without expressly stating its reasons for doing so. But comments at the hearing reveal the court was focusing on Saratoga's "form" objections, rather than on its "leading" objections. In fact, the trial court expressed its general agreement with Gomez's argument that he was entitled to ask Prieto "leading" questions as a "hostile" witness, thereby indicating that it was sustaining only Saratoga's "form" objections.

On appeal, Gomez attacks only the "leading" basis of the objections, arguing only that the trial court abused its discretion in sustaining Saratoga's objections, because he had the right to ask leading questions since Prieto, as a co-defendant, was a hostile witness. Gomez cites our holding in *Baltazar v. State*, No. 08-02-00447-CR, 2004 WL 1078502, at *1 (Tex. App.–El Paso May 13, 2004, no pet.) (not designated for publication), for the general proposition that, "When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." *Id.* (citing Tex. R. Evid. 611(c)).

---

**6.** Gomez contends that Saratoga's objection to this question was not properly preserved because Saratoga did not list this question in its written objection. As Saratoga explained to the trial court at the hearing, however, its written response stated the question verbatim but inadvertently listed the wrong page number to the reporter's record. The trial court stated it would allow Saratoga "some leeway" on that point, and thereafter sustained Saratoga's objection to the question. We agree with Saratoga that the trial court properly considered the objection, because Saratoga sufficiently brought the issue to the trial court's attention in its written objection, and then squarely placed the issue before the trial judge at the hearing, thereby sufficiently preserving the issue for appeal. *See, e.g., Aguilar v. LVDVD, L.C.*, 70 S.W.3d 915, 917 (Tex. App.–El Paso 2002, no pet.) (appellate court may examine both the parties' written objections and the record of any hearing to determine whether an "issue was actually presented to and considered by the trial judge").

**7.** Under the Texas Rules of Civil Procedure, objections to questions at an oral deposition are limited to "Objection, leading" and "Objection, form," and a more precise explanation of the objection is required to prevent waiver only if requested by the opposing party. Tex. R. Civ. P. 199.5(e). No request for a more precise explanation of Saratoga's objections was made during Prieto's deposition.

While we might be inclined to agree with this argument, Saratoga also expressly objected to the questions on the basis of "form," which the record shows could have been the actual basis for the trial court's decision to sustain the objections. In any event, because the trial court did not expressly state which of the objections it sustained, Gomez was required to challenge both possible grounds for the trial court's ruling. *See generally Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 285 (Tex.App.–El Paso 2007, pet. denied). Gomez failed to address the "form" objections in his brief, and we therefore conclude that his failure to do so waives any error in the trial court's ruling. *Id.* at 284–85 (appellant, who sought to challenge the trial court's exclusion of summary judgment evidence based on the appellee's evidentiary objections, waived error by failing to address all possible grounds for the trial court's ruling). We overrule Issue Three and affirm the summary judgment.