COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CHAD A. LOFTIN, | § | No. 08-19-00107-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 4 |
| GRACE C. LOFTIN, | § | of Williamson County, Texas |
| Appellee. | § | (TC# 18-0310-FC4) |

## **O P I N I O N**

This is an appeal[1] from a final decree of divorce dissolving the marriage between Appellant Chad A. Loftin ("Chad") and Appellee Grace C. Loftin ("Grace"), and determining issues concerning the care and custody of the couple's two young daughters. Chad contests the trial court's exclusion of evidence retrieved from a cell phone owned by Grace, as well as the court's allocation of costs. We affirm.

## I. BACKGROUND

Chad and Grace are the parents of two daughters, who were aged nine and four at the time of trial. Grace filed for divorce in January 2018. Chad filed a counterpetition days later. An agreed

---

[1] Although this case was originally filed in the Third Court of Appeals in Austin, it was subsequently transferred to this Court by order of the Supreme Court of Texas. We decide this cause in accordance with the precedent of that court if any conflict exists between the precedent of this Court and the transferor court. *See* TEX. R. APP. P. 41.3.

order was entered on the parties' joint motion to have the matter referred to a special judge for trial. That order provided, per the parties' agreement, that Grace "shall be responsible for all fees, costs, and expenses charged by [the special judge] and the court reporter for and at the trial of this case."

The primary issue at trial concerned Grace's sexual encounters with a variety of men other than Chad. Without Chad's knowledge, Grace had bought a reloadable cell phone that she used to communicate with men whom she met online.[2] Chad found the phone on a counter in the couple's home, opened it, and discovered hundreds of texts messages between Grace and numerous men, as well as photographs of men in various stages of undress and naked photographs of Grace. Many of the messages referred to sexual activity; some indicated possible drug use and requests for money.

Chad kept the cell phone and downloaded its texts and messages into an Excel spreadsheet. Those texts and messages formed the foundation of his claim at trial that Grace presents a threat to the children's safety and well-being.

Grace admitted at trial that the phone was hers, that she used it to communicate with fifty-seven men, and that she met six of those men and slept with five of them. She also admitted that some of the men with whom she had slept had given her money or gifts, but denied that the money or gifts were in exchange for sex. She stated that she deeply regretted her behavior and recognized her need for counseling, which she was then undergoing and intended to continue.

Michelle Munevar, a psychologist who conducted psychological and custody evaluations of both Chad and Grace, testified that Grace had a trauma history that included rape by multiple

---

[2] In briefing, Appellant describes the phone that Grace had purchased without his knowledge as a "burner" phone.

men when she was in her late teens. That trauma resulted in Grace suffering from PTSD and engaging in marital infidelities. Munevar testified that Grace needed long-term therapy, but she also related that persons who were familiar with Grace described her as a nurturing, loving, and attentive mother.

Munevar testified that Grace was willing to co-parent with Chad and wanted to promote a positive relationship between Chad and the children. Chad's attitude toward Grace, on the other hand, did not set a positive tone for co-parenting. Rather, his ability to co-parent was adversely impacted by his anger and by his fixation on labeling Grace a prostitute and insisting that she acknowledge herself as such.

A counselor who had treated the children also testified that Grace wanted to co-parent and did not harbor anger or hatred toward Chad, but that Chad had a lot of anger toward Grace and did not seem to want to co-parent with her. Similarly, the children's guardian ad litem expressed concern over Chad's anger and his obsession with characterizing Grace's behavior as prostitution. She did not observe that Grace presented any threat to the children's safety or well-being; and noted that Grace was very supportive of Chad. The guardian ad litem recommended that the parties be named joint managing conservators, with Grace having the exclusive right to designate the children's primary residence.

We note that the parties presented evidence at trial concerning some specific incidents involving disputes over the children and Chad's treatment of the children and of Grace. As may be expected, each party offered a different version of these events, the details of which are not material to this appeal. Suffice it to say that even Chad's version of events demonstrated his anger toward Grace, his continued characterization of her as a prostitute, and his belief that her past

3

behavior establishes that she is a present threat to the children's safety and well-being.

The special judge rendered judgment, as pertinent to this appeal, naming the parties joint managing conservators and designating Grace as the parent with the exclusive right to designate the children's primary residence. That judgment was subsequently incorporated into the final decree of divorce.

## II. DISCUSSION

In two issues on appeal, Chad contends that the trial court erred by excluding evidence taken from Grace's cell phone and by ordering that costs of court are to be borne by the parties who incurred them, despite the parties' prior agreement on costs.

We address each issue in turn.

### A. The Trial Court's Exclusion of Evidence

In his first issue, Chad contends that the trial court erred in excluding information from Grace's burner phone. In responding, Grace argues that the text messages and photographs at issue were properly excluded.

#### 1. Standard of Review

Evidentiary rulings are reviewed for abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). "A trial court abuses this discretion when it acts without regard for guiding rules or principles." *Waldrip*, 380 S.W.3d at 132 (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). But even if a trial court's evidentiary ruling is an abuse of discretion, reversal is appropriate only if the error was harmful. *Id.*; TEX. R. APP. P. 44.1. "Exclusion of evidence is likely harmless if the evidence was cumulative" of other evidence in the

4

record. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 840 (Tex. 2018) (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018)).

### 2. The trial court's evidentiary rulings

Trial of this cause commenced on August 21, 2018. At the start of the proceedings, counsel for Grace informed the court that Chad had only recently produced supplemental discovery that contained various text messages and "a lot of very inflammatory photographs . . . ." She objected on the ground that the production was not timely because the items were produced within thirty days of trial, even though Chad had had possession of the cell phone from which the items were taken for eight months prior to the production.[3] The court deferred ruling on the objection until the texts and photos were offered into evidence:

> Well, we will look at foundation. You can take him on voir dire about when he got it and those kinds of things before they are admitted into evidence, and we will deal with it at that point, okay? But, I mean, if truly they have been available prior to, then that's going to be fairly compelling; but, we just need to see.

Grace reurged her objection at the start of the second day of trial. The court ruled that the items taken from the phone that were not timely produced would be excluded. At that point, counsel for Chad stated that he wanted "to make very clear that many of the photos that were produced in the supplementation were also produced in the original document production." The parties then engaged in an extended discussion of whether Chad had adequately made the phone available to Grace for inspection or copying so that its content was timely made available to her, as well as the adequacy of the manner in which thousands of printed texts were produced to her.

---

[3] The record reflects three different dates for the date of the supplemental discovery production—July 31, August 2, and August 3. The discrepancy is immaterial as each of these dates is within 30 days of trial.

Chad's counsel then stated that most of the new production was updated bank statements and that there were "a few" text messages included. He reiterated that "[m]any of those were already produced and were produced for a second time."

When the court inquired about when the documents contained in the supplemental production became available to Chad, counsel responded:

> Again, I don't want the Court to be confused about what we're talking about here. The original set of text KIK messages[4] and emails, 4,000 pages worth, and I'm going to be going through with both clients, those were produced prior to April 13th. That's the subject of these two letters. She's talking about bank statements and some additional texts and emails. And some of those are—are double produced, so to speak. They were produced in the original documentation and some of them are more recent and that he discovered as he continued to go through thousands of pages of documents.
>
> I don't want to conflict the two. We've got thousands of texts which we're going to go through here today. And they will have every opportunity to redirect Mrs. Loftin and to ask Mr. Loftin about how he got these and ask him whatever questions he wants [sic] and make objections to incompleteness or whatever they want to do, but those were produced back prior to April. And she's talking about a small set of documents and trying to confuse the Court as to what was produced when. Most of that is bank statements, financial records and a few additional texts and which contain some photographs.

The court ultimately sustained Grace's objection to "anything that was generated after July 21 or after . . . ."

Our record contains three exhibits purporting to contain sexually explicit texts and messages, as well as some photographs, taken from Grace's cell phone. The document labeled Respondent's Exhibit Three was not admitted into evidence because the court found that it was not properly authenticated. The court informed Chad's counsel that it would reconsider that ruling if he wanted to offer the exhibit later through Chad, but the exhibit was never reoffered. Counsel

---

[4] Grace explained that KIK is an application she used to send messages to some of the men she met online.

6

questioned Grace about the content of Respondent's Exhibit Four but did not offer the document into evidence. Neither of these exhibits was the subject of the court's exclusion for late production.

Respondent's Exhibit Five is a single-spaced 112-page Excel spreadsheet that Chad testified he created by downloading the entirety of the phone's texts and messages. It was offered and admitted over Grace's objection.

Finally, Chad tendered the cell phone itself into evidence. The court did not admit the phone into evidence but took it into the court's possession so that, at the conclusion of the appellate process, it would be destroyed, an outcome to which the parties stipulated.

Chad asserts in his first issue on appeal that: "The trial court erred in excluding information from the cell phone of Appellee . . . ." In his brief, he discusses the exclusion of Respondent's Exhibits Three and Four, the documents that were subject to the late production objection, and the cell phone itself. In other aspects of his briefing, however, it appears that he is concerned only with the exclusion of the cell phone, despite phrasing his issue in terms of "excluding information from the cell phone . . . ." As the scope of Chad's appellate complaint is unclear, we will address each instance in which evidence relating to the phone was not admitted.

### a.  Exclusion of Respondent's Exhibits Three and Four

The trial court excluded Respondent's Exhibit Three on the ground that it was not properly authenticated. Chad does not address this ground on appeal. Rather, he discusses only objections concerning hearsay, optional completeness, and late production. Consequently, insofar as Chad challenges the exclusion of Respondent's Exhibit Three, nothing is presented for our review. *See Gomez v. Saratoga Homes*, 516 S.W.3d 226, 240 (Tex. App.—El Paso 2017, no pet.) (appellant is required to challenge all grounds for ruling).

7

Insofar as Chad challenges the exclusion of Respondent's Exhibit Four, Chad did not preserve any error because he never offered that exhibit into evidence and, as a consequence, the trial court never ruled to exclude it. *See* TEX. R. APP. P. 33.1 (party must make timely request to trial court and obtain ruling).

### b. Exclusion of untimely-produced documents

On appeal, Chad challenges the trial court's exclusion of some texts and photographs on the ground that they were not timely produced. But we cannot discern from our record precisely what it was that the trial court excluded on that basis. The disputed texts and photographs are not specifically identified or described anywhere in our record, nor are they included in the appellate record. It may be gleaned from the context of the dispute that the excluded documents contained the same kind of explicit sexual content as the texts and messages admitted as Respondent's Exhibit Five. That exhibit is an Excel spreadsheet that Chad testified he created by downloading the texts and messages from Grace's phone in their entirety. Consequently, the disputed texts may very likely be included in that exhibit. This possibility is bolstered by Chad's attorney's repeated insistence that much of the production to which Grace objected had already been produced.

We cannot conclude on this record that the trial court abused its discretion by excluding certain evidence as untimely produced because we cannot ascertain that the evidence was, in fact, excluded. In any event, regardless of whether the court's evidentiary ruling was in error, Chad has not demonstrated any resultant harm.

"[W]hen evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal." *In re Estate of Romo*, 503 S.W.3d 672, 678 (Tex. App.—El Paso 2016, no pet.); *see* TEX. R. EVID. 103(a)(2).

8

Otherwise, even if it were to conclude that evidence was erroneously excluded, the appellate court would be unable to determine that its exclusion was harmful. *In re Estate of Romo*, 503 S.W.3d at 678.

As just discussed, we cannot identify from our record what the trial court excluded. We therefore cannot determine that its exclusion was harmful. *See id.* In addition, exclusion of cumulative evidence is generally harmless. *See Washington*, 564 S.W.3d at 836. Respondent's Exhibit Five contains thousands of texts and messages between Grace and various men. The few additional texts contained in the late production are cumulative (if not actually duplicative) of the texts and messages admitted into evidence. Their exclusion did not probably cause rendition of an improper judgment. *See* Tex. R. App. P. 44.1.

### c. Exclusion of the cell phone

#### i. Chad's request at trial

Turning to Chad's argument that the trial court abused its discretion by excluding the cell phone itself, we find that the context in which the phone was offered into evidence is significant and, therefore, address it in some detail.

One point of contention between the parties at trial was whether Chad intended to tell the couple's daughters that their mother was a prostitute and, at some future point, to show them the contents of the phone. The following exchange occurred between Chad and his attorney during redirect examination:

Q  With respect to the phone, you don't want to keep that phone, do you?

A  Not after this is done, no.

Q  Right. Would you be willing to tender it into evidence as a piece of physical evidence today and get it out of your hands?

A   Yes.

[COUNSEL]:  Okay. Judge, I'd like to go ahead and do that now.

After having Chad identify the phone and testify that he had not changed it or given anyone else access to it, counsel again asked, "Are you willing to tender it into evidence so it is no longer in your possession?" Chad replied, "Yes."

Grace objected that she wanted the phone destroyed because she believed that Chad would show it to the children. Chad responded that he was offering the phone "in the same way that a gun is introduced into evidence in a murder trial and in the same way that a steering wheel is introduced into the record and into the physical evidence in a product defect case." Grace objected that the phone was "laden with hearsay," to which Chad responded that he was not offering it for the truth of matters asserted (*i.e.*, its content).

### ii.   The court's ruling

Interspersed with additional dialogue with Chad's counsel, the trial court ruled as follows:

> [THE COURT]: All right. I'm going to sustain the objection because I don't believe it's an appropriate document for the - - or an item for the purposes of the court. We will take possession of it at this juncture because it was offered and not admitted, but it will be subject to, potentially, it at such time - - Assuming there's an appeal, all appeals are exhausted. At that point I am mostly going to include it in the order. Beyond that point it will be destroyed.
>
> [COUNSEL for Chad]: And that will be our request as well.
>
> [THE COURT]: Okay. So we'll take it as marked as "9" but not admitted. It will not - - we'll have to figure a way and I will do it with the court reporter, figure a way that it is - - Because these will be turned over to the Clerk's office. There will have to be a seal order put with it, but I will accommodate that, order it sealed. There will be access subject to appeal.
>
> [COUNSEL for Chad]: And just to be clear, I don't want possession of it and I will represent on behalf of my client he doesn't want possession of it; but to the extent that it needs to be necessary for any pretrial motions or examination or anything

10

like that, just as a procedural safeguard, that's why I have offered it. So - -

[THE COURT]: Okay. So it was not admitted, but we will take possession of it subject to appeal. And, then, if all appeals - - I'm assuming there's a stipulation then. Assuming all appeals are extinguished, at that time the stipulation is that it will be destroyed.

At this point, both counsel for Chad and for Grace stipulated to this resolution regarding the tender of the physical possession of the phone to the court.

From the record, we observe that the court sustained the evidentiary objection asserted against the tender of the phone into evidence; yet the court also clarified that possession of the phone itself would remain with the court as agreed by the parties.

Next, we will address the hearsay issue.

### iii. Exclusion as hearsay

Chad asserts that the texts and messages contained in the phone are not hearsay because they are statements by Grace, herself. *See* TEX. R. EVID. 801(e)(2). We note, however, that many of the texts and messages are statements by the men with whom Grace was communicating, not by Grace.[5] But we also note that the record reflects that the phone was not offered for the truth of the matters asserted in its content. For this reason, to the extent that the court excluded the phone on the ground of hearsay, it abused its discretion. *See* TEX. R. EVID. 801(d) (hearsay is out-of-court statement offered for truth of matter asserted). This does not, however, resolve the matter. We must address the court's additional basis for exclusion, as well as an additional theory of admissibility now asserted by Chad.

---

[5] Grace asserts on appeal that the phone may also have contained communications from her friends and family, but there is no evidence to support that assertion.

### iv. Chad's theory on appeal

Chad states, without citation to the record, that he sought to have the phone admitted so that he could use it to cross-examine Grace and other witnesses concerning the allegation that Chad had manipulated some of its contents. But Chad did not tender the phone into evidence in his own case-in-chief. Rather, he tendered it well after he had completed his cross-examinations of Grace and each of her witnesses. The more significant problem, though, is that Chad failed to preserve this argument for our review.

To preserve error for appellate review, a party must make a timely request to the trial court that states the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint . . . ." TEX. R. APP. P. 33.1; *see In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999) (party is required to apprise trial court of error before that error can become basis for reversal). The purpose of the requirement is to promote judicial economy by giving the trial court "an opportunity to correct an error before an appeal proceeds." *In re C.O.S.*, 988 S.W.2d at 765.

The trial court in this case was not given the opportunity to consider Chad's present theory of admissibility because Chad did not raise that theory at trial.[6] Not only did he fail to urge that the phone was admissible to rebut other testimony, but he also repeatedly informed the court that his reason for offering the phone itself was simply to remove it from his own possession. Considering this explanation, the court's statement that it had sustained the hearsay objection having determined that the phone itself was not "an appropriate . . . item for the purposes of the

---

[6] Chad did assert in his motion for new trial and amended motion for new trial that the court abused its discretion by not admitting the phone to contradict the testimony of a police officer that certain images taken from the phone by Chad appeared to have been altered. But Chad was required to bring that assertion to the court's attention in a timely manner, *i.e.*, at the time the court ruled to exclude the phone. Only then could the court have effectively corrected the alleged error. *See* TEX. R. APP. P. 33.1 (requiring timely motion or request).

12

court," reflects a decision that it was not necessary to admit the phone into evidence to satisfy Chad's desire to have the phone taken out of his possession. And although the court did not admit the phone as evidence, it did take possession of it, thus effectively granting the relief Chad sought. This conclusion is reinforced by the fact that, after the court announced that it would take possession of the phone but not admit it into evidence, Chad did not indicate any dissatisfaction with that ruling but, instead, reiterated that all he wanted was to have the phone removed from his possession.

We conclude that the theory of admissibility Chad now asserts on appeal is not preserved for our review. *See* TEX. R. APP. P. 33.1; *In re C.O.S.*, 988 S.W.2d at 765. We further conclude that the trial court's decision that taking possession of the phone without admitting it into evidence was sufficient to provide Chad with the relief he sought provides an alternate basis for its ruling. Because Chad does not challenge that alternate basis for the court's ruling, he has waived on appeal any error in excluding the phone. *See Trahan v. Lone Star Title Co. of El Paso*, 247 S.W.3d 269, 284 (Tex. App.—El Paso 2007, pet. denied) (party waives error in excluding evidence by not challenging all grounds for ruling).

### v. Harm analysis

"[A] successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). When evidence is excluded, we must review the entire record to determine whether that exclusion probably resulted in the rendition of an improper judgment. *Id.*

Even if we were to conclude that the trial court erred in excluding the phone from evidence,

13

we cannot conclude that any such error probably caused rendition of an improper judgment. *See* TEX. R. APP. P. 44.1. Assuming that the phone would reveal that Chad did not alter or manipulate any of its contents, the impact of that revelation is minimal in the context of the record as a whole. Grace admitted sending and receiving sexually-explicit texts and messages to fifty-seven men, and to having had sex with five of those men, four of whom gave her money or gifts.

The trial court had before it an abundance of evidence establishing Grace's history of sexual encounters with multiple men, a history that Grace did not deny. This evidence included a spreadsheet containing the content of thousands of texts and messages evidencing this history. Admitting the phone itself would add nothing of consequence to the substance of Chad's allegations of Grace's misbehavior and potential threat to the children's safety and well-being.

Chad argues, though, that excluding the phone was harmful based on his impeachment theory because it would have called into question Grace's veracity concerning whether she was reformed, particularly in relation to any drug use. But the record contains independent evidence that Grace was given two different types of drug tests, both of which returned negative results. We fail to see how impeaching Grace on the issue of whether some texts or messages had been altered diminishes this direct evidence of her non-use of drugs.

Chad's only other argument on the issue of harm is that "the opinion of the guardian ad litem that [Chad] was too focused on activity he perceived to be 'prostitution' by [Grace] could have been re-evaluated if in fact the underlying messages were able to be introduced in their entirety." Presumably, Chad contends that the messages in their entirety would have supported his characterization of Grace as a prostitute, thus justifying his focus on that characterization. But, as previously noted, Chad himself testified that he downloaded the entirety of the phone's texts and

messages into an Excel spreadsheet, and that spreadsheet was admitted into evidence. For this reason, admitting the phone itself adds nothing of substance and would not have impacted the trial court's decision-making.

We have reviewed the entire record in this case and find no harm from the exclusion of the phone. *See Able*, 35 S.W.3d at 617. While the record contains considerable testimony and documentary evidence of Grace's past sexual misbehavior, it also includes considerable testimony attesting to her present fitness as a parent, including favorable testimony by a court-appointed psychologist, the children's counselor, the children's guardian ad litem, a mental health professional, a visitation supervisor, and two police officers. Our review of the record compels the conclusion that admitting the phone itself would not have impacted the trial court's decision to name the parties joint managing conservators and to designate Grace as the parent with the exclusive right to designate the children's primary residence.[7] In short, the record does not show that the exclusion of the phone, even if error, probably caused the rendition of an improper judgment. TEX. R. APP. P. 33.1.

### 3. Conclusion on exclusion of evidence

Chad waived any error in excluding Respondent's Exhibit Three because he does not challenge on appeal the ground on which the trial court excluded that exhibit. He did not preserve any error in excluding Respondent's Exhibit Four because he never offered that exhibit into evidence.

Chad did not properly present his claim of error in excluding evidence based on untimely

---

[7] Chad does not state in his brief precisely how he believes the trial court's judgment is in error. We assume from the context of his arguments that his complaint lies with the court's failure to name him sole managing conservator, as he requested.

production because that evidence is neither identified nor included in the record. We therefore cannot conclude that its exclusion was harmful.

Finally, Chad did not preserve for review his contention that Respondent's Exhibit Nine—Grace's cell phone—was admissible for the purpose of impeachment. And he waived any error in excluding the phone on the ground that taking it into the court's possession without admitting it into evidence was sufficient to grant Chad the relief he requested. In the alternative, Chad has not established that excluding the phone from evidence constitutes harmful error.

For all the foregoing reasons, Issue One is overruled.

## B. Allocation of Costs

In his second issue on appeal, Chad contends that the trial court erred in ordering that costs of court were borne by the party who incurred them without regard to the prior order requiring that Grace pay all costs related to the court reporter. Grace retorts that the court reporter costs that were incurred in this instance were not in fact court costs; and, in any event, Grace has already paid fees, costs, and expenses charged by the special judge and the court reporter.

A court in a divorce proceeding may award costs to a party "as it considers reasonable . . . ." TEX. FAM. CODE ANN. § 6.708. The award of costs is therefore within the discretion of the trial court. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980).

The final decree of divorce in this case orders that costs are to be borne by the party who incurred them. Chad urges that this is an abuse of discretion because the agreed order referring the case to the special judge recites, "The parties have further agreed, and [ ] IT IS FURTHER ORDERED that Grace Catherine Loftin shall be responsible for all fees, costs, and expenses charged by [the special judge] and the court reporter for and at the trial of this case."

16

The provision that each party shall bear its own costs is contained in the special judge's written rendition of judgment as well as the final decree of divorce. Chad filed a motion for new trial following entry of the former, and an amended motion for new trial following entry of the latter. He did not assert in either document that the court erred in its allocation of costs and we have not found anywhere else in the record where he raised that issue. No error in the allocation of costs is preserved for our review. *See* TEX. R. APP. P. 33.1.

In any event, Chad has not identified any costs that he has incurred in this proceeding that he asserts should be paid by Grace pursuant to the agreed order. And Grace states that she has already paid the fees, costs, and expenses charged by the special judge and the court reporter for the trial of the case. Chad has therefore not demonstrated any harm from the allocation of costs, even if that allocation were found to be erroneous.

Issue Two is overruled.

### III.  CONCLUSION

The final decree of divorce is affirmed.


GINA M. PALAFOX, Justice

February 5, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

17